'The PRESIDENT
stated the case and the opinion of the court as follows. The ground of the appellant’s equity is, that colonel Byrd, in the year 1767, published a scheme for disposing of his lots in the city of Richmond, and of his lands in the neighbourhood, by way of lottery, in which scheme, he described the improved lots as tenements in the occupation of the several tenants. The unimproved lots were to be laid off and to contain half an acre each. Under this scheme, the appellant and others became purchasers of tickets in the lottery. Some time after, and before drawing the lottery, colonel Byrd proceeded to survey and lay out the lots, and was about to reduce the improved tenements (which had been occupied by the tenants to various extents more or less,) to half an acre each, which being objected to, he desisted, and consented that they should stand agreeably to the occupation of the tenants, and most of them were laid out accordingly. But the tenement, called M’Keand’s was laid, off, as for half an acre, narrowing (as the appellant suggests) that tenement from its usual occupation ; to this circumstance however the appellant was a stranger, and having become the fortunate adventurer as to that tenement, he insists he was entitled to it, to the extent of its occupation, which included the land in dispute; but that colonel Byrd, confining him to the hounds of the lot, including only the houses on the tenement, had sold and conveyed the residue of the occupied ground of M’Keand, whom the appellant charges to have had full notice of his title thereto: that M’Keand had sold to Powell, and he to Mayo, who are also made defendants to the bill.
*M’Keand admits the scheme of the lottery, colonel Byrd’s survey, and his desisting from reducing the improved tenements to half an acre, and agreeing to let them stand upon their occupation. But he denies that there was any additional ground possessed by him, or inclosed on either side of the said tenement, although he understood that colonel Byrd had given up an old kitchen, and nearly half an acre of ground on the east side of the said tenement, and annexed the same thereto, as part of the prize lot. He denies that the appellant ever forwarned him from purchasing; and does not recollect that he offered to purchase the ground in dispute from the appellant. That he erected buildings on the ground in dispute to the value of ¿£1000, & then sold it to Powell.
The appellee, Mayo, in his answer, al-ledges that he holds the land under a deed from his father without notice of the appellant’s title, and believes that his father had no notice at the time of his purchase from Powell.
The father in his answer had expressly denied such notice, and there being no proof to the contrary as it respects either Powell or Mayo, they must be considered as purchasers without notice.
Several depositions being taken, the Chancellor directed an issue to be made up, and tried by a jury, to ascertain the boundaries of M’Keand’s tenement; also a survey to be made of the ground in dispute and returned, with the examination of witnesses, to the District Court, where the issue was to be tried, and also directed the scheme of the lottery, and the plan of the city of Richmond to be given in evidence to avail so much only as the jury should think they ought; the former was objected to by the appellees, and the latter by the appellant.
On the trial of the issue, the first jury could not agree. A second, determined the bounds in favor of the appellees, and the District Court certified that the weight of evidence was in favor of the appellant. The Chancellor declared the verdict satisfactory, and affirmed the decree of the County Court, dismissing the bill with costs, from which decree, the appeal comes to this court.
It is agreed by the parties, and the court think rightly, that the verdict in the District Court ought not to stand, upon the certificate of the judges, that the weight of evidence was against it: Since it is unusual for the Chancellor to be satisfied with such a verdict; and tho’ the Chancellor *566 was to judge whether his conscience was satisfied, this court, exercising their legal discretion on the same subject, see no reason to depart from the general rule, and therefore they take up the case upon its original merits.
*The question, how far the plot in the record is to be considered as evidence, may become all-important to persons interested in the town property; and therefore it is left undecided till cases shall arise, and that question shall be necessary to be decided, when probably it may be brought forth with fuller proof than appears in this record. In this case, it seems of no consequence, since neither Mr. Southall, nor Mr. M’Keand (the tenant at the time,) appear to have been present when Mr. Watkins made the original survey, so as to imply their consent that the occupied bounds of the tenement in question should be changed into the figure then laid down. Nor does it appear to the court, that such consent ought to be inferred from the exposure of the plan in the room where the lottery was drawn, even if the plaintiff had read it, which does not appear, since he could not from thence discover whether the lot was described according to the occupied bounds or not.
The appellant had a right to consider himself as entitled to the occupied bounds of Mr. M’Keand’s tenement, (whatever those were) under the scheme, and under colonel ftyrd’s agreement that the tenements should go according to the occupation, and not be governed by the quantity, of which the unimproved lots were to consist.
The proofs upon the whole, amount to this: that during the occupation of the tenants, some part of the ground in dispute was used as parcel of the tenement, for a garden, which was somewhat extended by one of the tenants, beyond what it had been before, and the vacant ground, between that and the street, was used as a cockpit, and sometimes by the planters, for picking their tobacco on. When M’Keand came to be the tenant, the garden was generally supposed to be part of the tenement, but as he did not want it, no use was made of it by him.
But since that circumstance might be known to adventurers at a distance, who might have received an impression of M’Keand’s tenement from observations on the actual occupation of former tenants, and since it appears that the neighbors acquainted with that circumstance, did not consider it as altering the extent of the tenement, but a number of them swear, that if they had been fortunate, they should have considered themselves as intitled to the land in dispute, as part of the tenement, a majority of the court are of opinion, that the appellant was .entitled to all the ground occupied as part of the tenement.
M’Keand purchased with full notice, and if the tenement had remained in his hands, and the appellant had commenced his *suit immediately, and M’Keand had, notwithstanding, proceeded in his improvements, he would probably have lost them with the ground itself. But since Mr. Southall tho’ he made his claim known, did not commence any suit to enforce it, till M’Keand had placed improvements on it to the amount of ^1000, (more than ten times the value of the lot,) it would be unreasonable, that he should in equity avail himself of the increased value produced by his own delay, since M’Keand had a right to suppose from that circumstance, that he had deserted his claim. All he can therefore expect in equity, is to be restored to the value of the ground at the time M’Keand purchased it, and which the court now think him entitled to.
The next question is, against whom, this relief is to be granted? If the ground had remained in M’Keand’s possession, or were now'in the possession of a purchaser with notice, the court would have no difficulty in determining, that it would have been charged with the payment of such value. But since it was a latent equitable charge only, and the appellee, Mayo, holds under his father who was a purchaser without notice of the appellant’s title, the court are of opinion, that the ground in his hand is not charged or liable to make satisfaction for such value, and that the decree is therefore right in dismissing the bill as to Mr. Mayo with costs.
But the appellant has a right to resort for satisfaction to the estate of M’Keand, and therefore, the decree is wrong so far as it dismisses the bill as to him, who ought to have been decreed to pay the value as before stated. That part of the decree must therefore be reversed with costs.
The period at which the value should be fixed, ought to be the time when M’Keand parted with the property to a purchaser without notice, and an issue ought to be made up by direction of the Court of Chancery, and tried to ascertain what was the value of the ground in dispute on the 26th of July 1779, independent of any improvement made thereon subsequent to the 8th of October 1769, which being ascertained, the amount is to be paid to the appellant with interest from July 1779, and his costs in the High Court of Chancery and the County Court, out of Mr. M’Keand’s estate. But as M’Keand had died since the pendency of this appeal, tho’ it has been revived, by consent of parties, as to his heirs and representatives in their general character without naming them, we think it proper that they should respectively be made specific parties, that they may discover a state of M’Keand’s assets, real and personal, in case there should *not be sufficient of the latter to satisfy this demand. Ror this purpose, the cause is to be remanded to the High Court of Chancery, that the suit may be revived against the executors or administrators, as well as the heirs or devisees of the real estate, and for further proceedings therein.

The principal case is reported in Wythe 9B. It is-cited in Turpin v. Thomas, 2 Hen. & M. 142; Lyons v. Brown, Gilm 120.